(115 So. 308)

### SPOONEY v. STATE. (4 Div. 358.)

Supreme Court of Alabama. Jan. 26, 1928.

1. **Jury** ⚖➡70(8)—**Ordering special venire in capital case of 35 of 48 jurors drawn for week, with 45 drawn specially, held reversible error within mandatory statute (Code 1923, § 8644).**

Order for summoning of special jury for trial of capital case venire to consist of 80 ju-

rors, made up of 35 of the 48 jurors drawn for regular juries of week and 45 drawn specially, held reversible error within Code 1923, § 8644, provisions of which are mandatory and require summoning of not less than 50 or more than 100 persons, including those drawn on regular juries for week set for trial.

2. **Statutes** ⚖➡225¾—**Re-enactment of statute judicially construed, to be mandatory, is equivalent to adoption of such construction (Code 1923, § 8644).**

Where requirement for drawing juries in capital cases had been interpreted by the Supreme Court to be mandatory, and court's opinions were pronounced prior to re-enactment of Code 1923, § 8644, the statute speaks in light of its previous interpretation, which became a part of it by legislative adoption.

3. **Jury** ⚖➡33(1)—**Right of trial by jury is right to trial by jury selected and impaneled as prescribed by law (Const. 1901, §§ 6, 11).**

Right of trial by jury is guaranteed by the Constitution (Const. 1901, §§ 6, 11), and entitles defendant to trial by jury selected and impaneled as prescribed by law of the land.

4. **Criminal law** ⚖➡322—**Since jurors in capital case must be summoned, presumption prevails that officers will comply with order and that persons summoned will obey mandate (Code 1923,.§ 8644).**

Since Code 1923, § 8644, requires that jurors in capital case, including those drawn on regular juries for week and those specially drawn, be summoned, and that court so order, presumption prevails that officers would comply with statute and order and that persons summoned would obey mandate thereof.

5. **Jury** ⚖➡10—**In construing mandatory statute dealing with right of jury trial, courts favor accused and fundamental right asserted.**

Where a mandatory statute deals with fundamental rights such as trial by jury, courts, in construing and applying them, lean with all reasonable favor to accused and right asserted.

6. **Constitutional law** ⚖➡257—**Constitutional provision guaranteeing due process secures citizen against arbitrary action of authorities and places him under protection of law (Const. 1901, §§ 6, 13).**

Const. 1901, §§ 6, 13, providing that in criminal prosecution accused be not deprived of life, liberty, or property except by due process, secures citizens against arbitrary action of those in authority and places them under protection of law.

7. **Criminal law** ⚖➡1169(1)—**Overruling objection to question as to defendant's companion's statements not in defendant's presence and refusal to exclude answer held prejudicial error.**

Where defendant shot his victim, who was approaching the automobile in which defendant was riding, and defendant immediately left scene of killing, overruling objection to questions to state witnesses as to statements of defendant's companion, and overruling motion to exclude answer thereto, was prejudicial error, where statements were not made in defendant's presence.

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Criminal law ⬤⬤450—Whether defendant violated statute prohibiting reckless driving, being jury issue, overruling motion to exclude witness' statement that defendant was "driving reckless" was error (Code 1923, § 3328).**

In murder prosecution, where defendant killed his victim who approached automobile, in which defendant was riding, with order to stop since question of whether defendant had violated Code 1923, § 3328, prohibiting reckless driving on public way was under evidence question for jury, overruling his motion to exclude testimony of witness who stated as conclusion that defendant kept going "still driving reckless" was error.

**9. Arrest ⬤⬤68—Officer making arrest should make known his purpose, his official capacity, and cause of arrest, unless offense is committed in his presence (Code 1923, § 3268).**

An officer attempting to make arrest should, if opportunity is given, make known his purpose, official capacity, in which he is acting, and cause of arrest, unless there is arrest for offense committed in his presence and under Code 1923, § 3268, he is making arrest on the spot or is in fresh pursuit.

**10. Homicide ⬤⬤307(1)—Refusal of charge on degree of crime of killing while resisting arrest, not applying principles specifically to defendant's case, was not error.**

In murder prosecution, while defendant's requested charge contained correct principle of law applicable to defense that killing of officer or assistant was in resisting arrest, inquiry in determining degree of homicide is whether resisting party had knowledge or notice of official character or of presence for exercise of official authority, and, if he was without knowledge, homicide could not be more than manslaughter, unless resistance was in enormous disproportion to threatened injury, its refusal was not error, where it did not apply principle specifically to defendant's case.

**11. Homicide ⬤⬤307(4)—Refusal of charge on degree of homicide in resisting arrest which ignored authority of private citizen to arrest for offense committed in his presence, held proper (Code 1923, § 3267).**

Where defendant shot his victim, who approached automobile with order to stop, charge that, if defendant did not know victim was an officer or that he was present to exercise official authority, then not to find him guilty of greater crime than manslaughter, ignored authority of deceased, under Code 1923, § 3267, as a private citizen, to arrest if defendant committed public offense in his presence, and hence its refusal was not error.

**12. Homicide ⬤⬤272—Whether deceased attempted to arrest defendant or was prompted by other motives held, under evidence, for jury.**

Where defendant shot his victim, who approached defendant's automobile with order to stop, whether deceased was attempting to arrest defendant or was prompted by other motives was, under evidence, for jury.

**13. Homicide ⬤⬤111—Defendant, not knowing deceased was officer and entertaining honest belief of bodily harm or death, could resist even to taking deceased's life.**

Where defendant shot his victim, who approached defendant's automobile with order to stop, if deceased was not attempting to arrest defendant for offense committed in his presence, and defendant did not know he was an officer, and no notice of deceased's authority was given, and if circumstances were such as to impress reasonable man that he was in danger of suffering serious bodily harm or death, and defendant entertained such honest belief and was free from fault and could not escape, he could resist even to taking of deceased's life.

Appeal from Circuit Court, Dale County; J. S. Williams, Judge.

Columbus Spooney was convicted of murder in the first degree, and he appeals. Reversed and remanded.

These charges were refused to defendant:

"(38) The court charges the jury that, in all cases of the killing of an officer, or of an assistant, in resistance of arrest, a material inquiry, in determining the degree of homicide, is whether the party resisting had knowledge or notice of official character and of presence for the exercise of official authority. If there is not such knowledge or notice, the homicide cannot be more than manslaughter, unless the resistance was in enormous disproportion to the threatened injury."

"(52) The court charges the jury that, if they believe from the evidence that the defendant did not know that Williams was an officer and that he was present for the exercise of official authority, then you cannot find him guilty of any higher degree of homicide than manslaughter."

C. O. Stokes, of Ozark, and Farmer, Merrill & Farmer, of Dothan, for appellant.

The jury law is mandatory, and the defendant's motion to quash should have been granted. Waldrop v. State, 185 Ala. 23, 64 So. 80; Jackson v. State, 171 Ala. 38, 55 So. 118; Bailey v. State, 172 Ala. 418, 55 So. 601; Andrews v. State, 174 Ala. 11, 56 So. 998, Ann. Cas. 1914B, 760; Carwile v. State, 148 Ala. 583, 39 So. 220; Tennison v. State, 188 Ala. 97, 66 So. 112. Remarks by bystanders or onlookers, who in no wise participated in the transaction, are not admissible as of the res gestæ, particularly so when made after defendant has left the scene of the difficulty. Pope v. State, 174 Ala. 80, 57 So. 245; Powell v. State, 7 Ala. App. 17, 60 So. 967; Vinson v. State, 10 Ala. App. 61, 64 So. 639. Prejudicial statements, not bearing on the crime charged, made by a third party subsequent to the commission of the offense and not in the presence of the accused, are inadmissible. Young v. State, 149 Ala. 19, 43 So. 100; Benjamin v. State, 148 Ala. 671, 41 So. 739; Moses v. State, 88 Ala. 78, 7 So. 101, 16 Am. St. Rep. 21; Gordon v. State, 129 Ala. 113, 30 So. 30. Charge 38 was a correct statement

---

⬤⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of law, and its refusal was error. Sanders v. State, 181 Ala. 47, 61 So. 336. Charge 52 was erroneously refused. Keith v. State, 97 Ala. 32, 11 So. 914; Parker v. State, 88 Ala. 4, 7 So. 98; Ex parte Johnson, 183 Ala. 88, 63 So. 73; Beasley v. State, 181 Ala. 28, 61 So. 259.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.

BROWN, J. The appellant was indicted, tried, and convicted of murder in the first degree and sentenced to death.

[1] After due arraignment, an order was entered by the court fixing the date of defendant's trial and for the summoning of a special jury for the trial. The order of the court fixing the number and prescribing the constituents of the venire was in these words:

"It is further ordered that the venire for the trial of this case shall be 80 in number, *consisting of 35 jurors drawn for the regular juries of this week,* together with 45 drawn specially from the jury box of this county by the trial judge in open court in the presence of the defendant, *and that summons be served on all jurors composing the said venire to appear and be present for the trial of this case at the time above named.*" (Italics supplied.)

Motion was made to quash the special venire, and on the hearing of the motion it was admitted that the names of 48 persons were drawn to serve on the regular juries for the week this case was set for trial, and that the names of 13 of such jurors so drawn were omitted from the list served on the defendant, 6 of whom had not been summoned to serve as jurors on the regular venire, and the other 7, who had been so served, had been excused "for illness *and various reasons*" when the regular juries were impaneled for the week, and before the defendant's case was set for trial.

[2] The provisions of the statute, notwithstanding an effort at legislative interpretation to the contrary, requiring the trial court in capital cases to "make an order commanding the sheriff to summon not less than 50 nor more than 100 persons, *including those drawn on the regular juries for the week set for the trial of the case,* and shall then in open court draw from the jury box the number of names required, *with the regular jurors drawn for the week, set for the trial,* to make the number named in the order, and shall cause an order to be issued to the sheriff to summon *all* persons therein named to appear in court on the day set for the trial of the defendant, and must cause a list of the names of all the jurors drawn for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant, by the sheriff, and the defendant shall not be entitled to any other or further notice of the jurors drawn for his trial nor of the charge or indictment upon which he is to be tried" (Code 1923, § 8644), have uniformly been held to be mandatory, and many of these holdings were pronounced prior to the adoption of the statute into the Code of 1923, into which it was carried forward without change (Zininam v. State, 186 Ala. 12, 65 So. 56; Waldrop v. State, 185 Ala. 23, 64 So. 80; Carmack v. State, 191 Ala. 1, 67 So. 989; Tennison v. State, 188 Ala. 90, 66 So. 112; Edgar v. State, 183 Ala. 36, 62 So. 800), with the result that the statute now speaks in the light of its previous interpretation which has become a part of it by legislative adoption (Donahoo Horse & Mule Co. v. Durick, 193 Ala. 456, 69 So. 545; Brown, Treas., v. Gay-Padgett Hdwe. Co., 186 Ala. 561, 65 So. 333).

In one of the cases cited above, decided before the adoption of the statute as a part of the present Code of law, it was observed that:

"The power of the Legislature to prescribe the interpretation of its own language cannot be doubted. But it has been often noted that interpretation clauses in statutes embarrass rather than assist the courts in their decisions (Endlich, Interp. of Stats. § 365), and that has been found to be the case with the act in question. When the Legislature in this act, along with its general prescription for interpretation, provided specific regulations, which must have been deemed essential to the proper conduct of trials by jury, and which, if they are to have any operation at all, must be made effectual according to the specific language of the act, it so provided that either such specific regulations must be accepted by the courts *as mandatory,* or *the statute as to them must be held to be insensible and of no effect.*" Zininam v. State, supra.

In the case just cited the provision of the statute, now section 8637 of the Code of 1923, that "no objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors," was construed to apply to clerical and ministerial mistakes in the preparation of the venire, not to a disregard of the specific mandatory provisions of the statute as to the court's order prescribing the constituents of the special venire.

[3] The right of trial by jury is fundamental in our jurisprudence, guaranteed by the Constitution (Const. 1901, §§ 6, 11), and, if this guaranty means anything at all, it is that the defendant is entitled to trial by a jury selected and impaneled as prescribed by the law of the land.

In this case the order of the court prescribing the constituent of the jury for defendant's trial ordered that *35 of the 48 names drawn on the regular juries for the week,* together with those specially drawn, should constitute the venire for defendant's trial. Which 35 of the 48 names were to be included in the list is left to speculation. If the clerk of the court had placed on the list the 13 names omitted from the regular juries for the week, or any number of them, together with a sufficient number of those remaining

to make 35, and the names specially drawn, and the sheriff had summoned these so listed, this would have been a literal compliance with the order. If it be assumed that the order referred to the names of the 35 jurors selected and impaneled on the regular juries for the week, still the order was a total disregard of one of the mandatory provisions of the statute, and was at best an arbitrary substitution by the court of such list for the names provided for by the statute.

In Walker v. State, 204 Ala. 474, 85 So. 787, wherein the trial court had inadvertently followed the provisions of the Act of August 31, 1909 (Acts Sp. Sess. 1909, p. 305), instead of the act as amended by that of September 29, 1919 (Acts 1919, p. 1039), with the result that the venire in that case was constituted of the names of the jurors drawn and summoned for the week in which the case was tried, instead of those drawn as required by the latter act and as now required by law (Code of 1923, § 8644), this court was unanimous in holding that error was committed, and by a bare majority that the error was without injury, for the reason, to quote from the opinion:

"The result of the court's action, though erroneous, was to secure to appellant a greater number (within 65) from which to select the jury for his trial than would have been the case had the court constituted the not summoned members of the regular juries a part of the special venire for appellant's trial."

[4] The conclusion of the majority stated in that case, upon which it applies the doctrine of error without injury, assumes that the jurors drawn but not summoned, if summoned for the special service as required by the statute, would not appear for service, or that they would not be served in compliance with the order of the court. It requires but a moment's reflection to discover that this reasoning and assumption is wholly fallacious. The law requires that all of the jurors, including those drawn on the regular juries for the week the case is set for trial, and those specially drawn, be summoned to appear for service on the day set for the trial, and that the court so order. The presumption should prevail that the officers of the law would comply with the statute and the order of the court, and that the persons summoned would obey the mandate of the summons, rather than to the contrary. Walker's Case, supra, was followed by a divided court in Lewis v. State, 205 Ala. 658, 88 So. 831, and that case was affirmed by applying the doctrine of error without injury.

In the case of Umble v. State, 207 Ala. 508, 93 So. 531, the trial court did not draw the regular venire for the week the case was tried, and hence could not comply literally with the statute, but ordered the drawing of a special jury of 90 names, and then drew and had served on the defendant the names of 100 jurors for his trial. On appeal, it was held that the accused had no ground to complain.

All of our decisions are uniform in holding that a failure of compliance by the trial court with the mandatory provisions of this statute constitutes error, and in all the cases in which the doctrine of error without injury has been applied there was at least certainty as to the constituents of the special venire; but in the case at bar the order of the court leaves the matter open to speculation and selection by the ministerial officer of the court.

[5] Aside from the mandatory provisions of the Constitution, nothing speaks with more force or greater authority than a mandatory statute, especially when it deals with fundamental rights such as the right of trial by jury, a right guarded with great jealousy, and courts, in construing and applying such statutes, "lean with all reasonable favor to the accused and the right asserted." Kruetner v. State, 202 Ala. 287, 80 So. 125. To apply the doctrine of error without injury to a disregard of the provisions of the statute emasculates its mandatory force and reduces it to a mere suggestion that the venire in capital cases should be constituted of the regular juries drawn for the week in which the case is set for trial, and those specially drawn. To so hold in the interest of speed and expediency would be but yielding to the dangerous tendency of the time, a breaking away from the established order of a constitutional government of law, and substituting therefor a government of men, injecting into the administration of justice an uncertainty as varied as the opinions of men.

The argument that the order of the court fixed 80 as the number of jurors for the defendant's trial, that he had this number of qualified jurors, that he was not entitled to any special person or persons on the list, and that he has no right to complain, is fully answered by the provisions of the statute—the law of the land—he is entitled to a jury selected from the names of those drawn as regular jurors for the week his case is set for trial and those specially drawn from the jury box of the county in open court in his presence.

[6] "The principle that no man shall be deprived of his liberty or property except by 'the law of the land' is said to be more ancient than written Constitutions, 'and breathes so palpably of exact justice that it needs no formulation in the organic law.' It is but an expression of the fundamental principle that inspired civilized man to form a government, the ultimate purpose of which is to protect the individual in working out his destiny, and finds expression in our Constitution in these words: 'That in all criminal prosecutions the accused has a right to be heard by himself and counsel, or either; * * * and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of

law.' * * * Constitution of Alabama 1901, §§ 6, 13. * * *

"The manifest purposes of the quoted constitutional provisions, where life, liberty, and property are affected, are to secure the citizen against the *arbitrary action of those in authority*, and to place him under the protection of the law." State v. Bush, 12 Ala. App. 311, 68 So. 492.

We are of opinion that the motion to quash the special venire should have been sustained.

The evidence shows that the killing in this case occurred on Sunday afternoon, July 18, 1926, on the public highway between Dothan and Midland City. The deceased, who was a policeman of Midland City, and also a deputy sheriff, with his wife, brother-in-law, sister, and some children were returning to Midland City in a Ford car, after a pleasure drive through Pinckard. The defendant, Phil Utsey, Utsey's wife and another woman, all negroes, traveling in an automobile, being driven by the defendant, were on their way to Dothan. Mrs. Williams, the wife of the deceased testifying as a witness for the state, details the facts and circumstances bearing and attendant upon the infliction of the fatal wound on her husband, as follows:

"We went through Pinckard and were gone about an hour, and we came back through Pinckard, and just on the other side of Mr. York's place is where the car passed us the first time. The car passed us again close to Sasser's Filling Station at Midland City. We were both going the same way, towards Dothan. There were four negroes in the car that passed us, two men and two women, a man and woman on each seat. The third time is when the shooting occurred; the cars were somewhere close together then. We were ahead of them at that time; we stopped, and my husband got out and went around in front of the car. Their car at the time my husband went around in front of it was at the back end of our car, but it hadn't come to a stop. When he got about even with the windshield, the pistol fired. At the time the pistol fired, the two cars were close together, our car being in front, and the motor of their car was about even with the hind wheels of ours. One shot was fired. Immediately after the shot was fired, I got out and went and found my husband lying on the ground. I did not see any one leave the other car, I didn't notice right then who was there, but when I did notice there were two women and one man. My husband was lying kind of on his back. He had a wound on his nose. That wound was produced by a pistol. He had no other wounds on him that I know of. He never did say anything, and lived just a few minutes. * * *

"The defendant was driving the car the negroes were in, and the other man was on the back seat. *The defendant was not there when I went around there where my husband was*, I never did see him any more. The other one that was on the back seat was there. In driving the car when they would pass us, they would go pretty close to us, and they liked to have hit us one time. They would slow up after they would get by. They didn't come back, but they were going the same way we were all the time. When they would pass us, they would slow up for us to catch them; and then our car would pass them, and they would come by us again. That passing happened twice, and the third time is when the shooting occurred. In running their car along the road, they were zigzagging."

In response to the solicitor's question, "Did you notice whether or not any of them were drunk?" the witness stated:

"Well, I don't know whether they were or not, but the one that was driving, his head was just rolling about. * * * He did like this, and his eyes were almost closed. My husband didn't do anything except get out of the car and say 'Stop!' I did not see him attempt to use a weapon of any kind. He had one in his hand, but it was by his side all the time, and he never did throw it up. I didn't hear any remarks that were made by any one in the other car."

The state's witness Mauk, whose testimony as to the salient facts is substantially in accord with that of Mrs. Williams referring to the defendant and those with him. He testified:

"They passed us before we got to Midland City. * * * They were going from one side of the road to the other. They were not going so awfully fast or so awfully slow—about 30 miles an hour, or 25. * * * They got up the road a piece, and we passed them, and Marvine Williams (the deceased) called to them and said, 'Drive more carefully.' "

The defendant testified:

"Phil Utsey and his wife and another woman and I came to Ozark that day. We got here about 10:30 or 11 o'clock. We left here to go up to Ariton about 1:30 or 2. We came back here from Ariton and started on our way to Dothan. We stopped out here from Newton at Phil's aunt's. Phil was driving the car as we went out there. After that I drove. After we left his aunt's and came back into the highway, we didn't have no car trouble altogether, but it was stopping and slowing up, the carburetor had trash in it. I don't remember passing at any time that car which stopped in front of us. I did not at any time previous to the time that the car stopped in front of us hear any one shout at us to stop. I did not at any time hear any one tell us not to drive so recklessly. I didn't see any car pass us. Just before we got to where this shooting took place, we had car trouble, and I was working the floater with my right hand, trying to get it to run; it was slowing up and I was working on it. When I was working on the floater, the car drove by, and I looked up, and it got about 10 or 12 steps ahead of us, and Mr. Williams jumped out with his pistol in his hand, and I looked up. I was still working on the floater, and he came running to the car with the pistol in his hand leveled at me. I didn't hear him say anything. I did not see any badge of any kind on him. I did not know Mr. Williams at the time. I had never seen Mr. Williams before. He came rearing up with his pistol in his hand leveled at me, and he didn't say anything, and it frightened me, and I just knowed it was somebody coming to mob me, and I grabbed his hand and reached and

got my gun and fired, and I ran out of the car then. I fired and jumped and ran. I took my gun off with me. When Mr. Williams was coming up there towards me with his pistol in his hand and pointed at me, I was under the steering wheel. I had been driving the car."

[7] The evidence is without dispute that the defendant left the scene of the tragedy immediately after he fired the fatal shot; that he was not present when the statement, imputed to Phil Utsey by the witness Mrs. Williams, made in response to her request that a doctor be called, "he told me to shut my mouth, I didn't need a doctor." This statement was made after the fact under investigation, by a third person, in the absence of the defendant, and was so separated in point of time as not to be of the res gestæ. It sheds no light on the issues in the case, and was, in view of the circumstances, of a nature calculated to prejudice the jury against the defendant; and the court erred in overruling the defendant's objection to the questions and the motion to exclude the answer. Pope v. State, 174 Ala. 63, 57 So. 245; Nelson v. State, 130 Ala. 83, 30 So. 728; Pitts v. State, 140 Ala. 70, 37 So. 101; Lundsford v. State, 2 Ala. App. 38, 56 So. 89. For the same reason the court fell into error in overruling objections and motion to exclude a like statement by the witness Mrs. Mauk.

[8] Whether or not the defendant was violating the statute (Code of 1923, § 3328) prohibiting reckless driving on a public highway, was, under the evidence, a question for the jury. It was not permissible, therefore, for a witness to state as a conclusion that the defendant kept going, "still driving reckless," and the court erred in overruling the defendant's motion to exclude the quoted statement made by the witness Mrs. Mauk. Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640; J. H. Arnold & Co. v. Gibson, 216 Ala. 314, 113 So. 25; A. G. S. R. R. Co. v. Hall, Adm'r, 105 Ala. 599, 17 So. 176.

[9] The evidence is without dispute that the deceased and the defendant were strangers to each other; and, so far as the evidence shows, there was nothing in deceased's dress to indicate that he was an officer of the law, or that he informed the defendant of his official capacity or his purpose to arrest. An officer attempting to make an arrest should, if opportunity is given, make known his purpose and the official capacity in which he is acting, and the cause of the arrest, unless it is for an offense committed in his presence and he is making the arrest on the spot or in fresh pursuit. Code of 1923, § 3268; 2 R. C. L. 464, § 221, and authorities cited under notes 9 and 10; Brown v. State, 109 Ala. 70, 90, 20 So. 103, 110. In the case last cited, this court, speaking through the Chief Justice stated the law to be:

"Ministerial officers having authority to arrest or imprison for breaches of the peace, or for other offenses, and the persons they may call to their assistance, are, while in the execution of the authority, upon the highest considerations of public policy, deemed under the peculiar protection of the law. And if, while on a proper occasion, and in a proper manner, they are proceeding in the execution of the authority, they be resisted and killed, the homicide is murder in all who participate in its perpetration, if the intent be to kill, or to do grievous bodily harm. 1 Whart. Am. Cr. Law (9th Ed.) § 413; 1 Russell on Crimes, 732, 735. If the homicide is not attended with evidence of express malice, the malice prepense or aforethought, the ingredient of murder, is implied from the intentional and unlawful taking of human life. 1 East, 295; 3 Green Ev. § 123; Whart. Homicide, § 226; 1 Archbold Cr. Pl. & Pr. (Pomeroy's Ed.) 678. Whenever human life is intentionally taken without the authority of law, malice is presumed or implied, unless the evidence, the res gestæ, repels the presumption or implication. More than presumed or implied malice is essential to constitute murder in the first degree. There must be conjoined with malice, willfulness, deliberation, and premeditation; or the crime must have been perpetrated under some one of the categories enumerated in the statute. Whether there is the concurrence and coexistence of these essential constituents is, of necessity, dependent on the facts and circumstances of the particular case; and, as we have said, the determination of the fact lies within the exclusive province of the jury, under proper instructions from the court. When no more appears * *. * than an unlawful and intentional killing, without excuse or mitigation, the homicide cannot be deemed more than murder in the second degree. Fields v. State, 52 Ala. 348; 2 Bish. Cr. Proc. § 603; 1 Whart. Am. Cr. Law (9th Ed.) § 392, and authorities cited.

"In all cases of the killing of an officer, or of an assistant, in resistance of an arrest, a material inquiry, in determining the degree of the homicide, is, whether the party resisting had knowledge or notice of official character and of presence for the exercise of official authority. If there is not such knowledge or notice, the homicide cannot be more than manslaughter, unless the resistance was 'in enormous disproportion to the threatened injury.' Noles v. State, 26 Ala. 31 [62 Am. Dec. 711]; 1 Russell on Crimes, 835; 1 Whart. Am. Cr. Law (9th Ed.) § 413; Com. v. Drew, Cases on Self-Defense, 718; Croom v. State, 85 Ga. 718, 11 S. E. 1035, 21 Am. St. Rep. 179; Roberts v. State, 14 Mo. 138, 55 Am. Dec. 97. There may be a presumption that the regularly commissioned sheriff is known to all the inhabitants or residents of the county; and that the regularly commissioned constable is known to all the inhabitants or residents of the precinct of his election or appointment. The presumption founded on the publicity and notoriety of official relation cannot be indulged if the officer making the arrest is, as in the present case, of special deputation, an officer for a particular occasion only, whose authority is exhausted and relation terminated when the mandate of the process issuing to him is executed. Such an officer is bound to give the party he seeks to arrest some notification of his authority and purpose. 1 East, 312; 2 Roscoe Cr. Ev. (8th Ed.) 998. The notice need not

be in any particular form of words; all that is necessary is that the party be informed that he is required by one having the authority of the law to yield submission to the authority. 1 Russell on Crimes, 839, 840; notes to Hawkins v. Commonwealth, 61 Am. Dec. 158. * * *

"It is not the duty of the citizen to submit to any other than a lawful arrest. It has been said, the duty 'is found in the law side by side with the right of resistance to an unlawful one; and it is quite as important that no one should be unlawfully taken as that every one lawfully accused should be made to answer.' Drennan v. People, 10 Mich. 169. The requirements of the statute are drawn from and in affirmation of the common law. They are ample to secure the execution of and submission to legal process; but they are equally intended to protect the citizen from unlawful interference with his personal liberty. It is not intended that he shall yield his person and liberty to the dominion of even a known public officer, certainly not to one unknown, upon his mere demand, who gives no information of his authority. If this were not true, no man would be safe from invasions of his personal liberty, and unlawful arrests would be made effectual." Brown v. State, supra.

[10] While refused special charge made the basis of assignment of error 38 is copied from the opinion of the court in Brown v. State, 109 Ala. 70, 20 So. 103, and states a correct general principle of law, applicable to defendant's case, the charge is not so worded as to apply the principle specifically to his case, and the trial court will not be put in error for refusing it.

[11] The special charge set out in assignment of error 52 ignores the statutory authority of the deceased, as a private citizen, to arrest the defendant, if defendant was committing a public offense in his presence. Code of 1923, § 3267.

The other charges were properly refused for reasons manifest on their face.

[12, 13] Whether the deceased was attempting to arrest the defendant, or was prompted by other motives in doing what he did and whether or not the defendant was guilty, and, if guilty, of what offense, were all, under the evidence, questions for the jury. If the deceased was not, at the time, attempting to arrest the defendant for an offense committed in his presence, and defendant did not know that the deceased was an officer attempting his arrest, and notice of deceased's official authority was not given, and the circumstances surrounding the defendant at the time were such as to impress a reasonable man that he was in danger of suffering serious bodily harm or death, and the defendant entertained an honest belief that he was so circumstanced, and he was free of fault, and had no reasonable mode of escape, the law gave him the right to resist, even to the taking of deceased's life. Brown v. State, supra; Noles v. State, 26 Ala. 31, 62 Am. Dec. 711.

For these errors the judgment of the circuit court is reversed, and the cause is remanded for another trial. The defendant will be held in custody until discharged in accordance with the law.

Reversed and remanded.

All the Justices concur.