195 So.2d 803

**Anthony Lofton GREGG**

v.

**STATE.**

**7 Div. 843.**

Court of Appeals of Alabama.

Sept. 20, 1966.

Rehearing Denied Oct. 18, 1966.

Beck & Beck, Fort Payne, for appellant.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

This cause was submitted on May 19, 1966, only on a brief from appellee.

I.

Gregg was indicted for robbery and was convicted of assault with intent to rob. The court sentenced him to four years imprisonment.

We have carefully reviewed the entire record under the mandate of Code 1940, T. 15, § 389, and affirmed the judgment below without opinion September 20, 1966.

## II.

### On Rehearing

October 3, on applying for rehearing, appellant filed a brief which, under the Statement of Facts, sets out in part:

"* * * It further appears that during the trial of the case, after the jury had retired, the bailiff, Mr. Stone, about 8:30 p. m., after the jury had had their supper, one of the Jurors knocked on the Jury room door and stated they could not agree, and the Bailiff, Mr. Stone, told the Juror to get back in there and decide the case, as it was costing the County a lot of money. R. P. 78, through 93. This was the evidence taken on the motion for a new trial, which was duly filed.

"The Judge, in his order overruling the motion for a new trial, made this statement: R. P. (The page is not numbered, but is the page next to the last page in the record) 'The Court finds that one of the Bailiffs who had this jury in charge, remarked to one or more of the Jury at the door to the Jury room, this or this in substance: 'You'all stay and decide the case, if you can, it is costing the County money.' The Judge, himself, stated that there was no doubt that this statement was made, and it was heard by several of the Jurors. The undisputed testimony is that when the Juror made this statement to the Bailiff, the Jury did not come out of the Jury room, and they went back in the Jury [room] and then within a short while brought in a verdict finding this defendant guilty."

From the transcript of evidence on the motion for new trial, we have condensed the following:

Juror T. C. Ray testified (on the new trial motion) that before supper the bailiff "said something about making a decision, if we could." (R.86.)

Juror D. F. Hicks did not hear what the bailiff said. Hicks was a little hard of hearing.

Nor did Mr. Lester Fricks recall any statement by the bailiff; also Alva Clark (R.89, 90); Clarence Harris (R.93); Earl L. Smith (R.97); and Frank Hicks (R.107, 108).

Juror George W. Dukes did not hear the statement imputed to the bailiff (R.95, 96). But Messrs. Pete Fuller (R.96, 97) and Hoyt McGullion (R.99, 100) did hear the statement.

Juror Orval Rains heard the bailiff say, in substance, "you fellows go back in there and decide this case if you can. It is costing the county a lot of money." The bailiff did not refuse to let the jury see the judge (R.91, 92).

Juror Billy M. Galloway testified:

"Q. Did you hear the Bailiff say, 'You fellows go in there and decide the case, if you can. It is costing the County a lot of money?

"A. I am the one that talked to the Bailiff. What was said before we went to supper was—we had a ten to two vote, and I told the Bailiff that it looked like we had a hung jury, and he said he would go tell the Judge. We went to supper, and when we ate supper we went back in the jury room. We decided to take one more vote, and we voted again and reached a decision. All twelve of us thought he was guilty, but it was on the question of the extent.

"*Mr. Morris Beck:* We object to that.

"*The Court:* I sustain the objection to that. I think you are going into the deliberation of the Jury. That is not before the Court now on this particular motion.

"Q. Did the Bailiff ever refuse to let you come to see the Judge?

"A. No, sir."

"Q. Did you hear him make that statement that I just mentioned?

"A. Well, I don't know whether they were words like that or not.

"Q. What did he say?

"A. At the time it looked like we had a hung jury. He said something to this effect to me—he didn't say it to the rest of the Jury, I was at the door—he said for us to reach a decision, if we could, that he would come and tell the Judge.

"Q. He said, 'Reach a decision, if you can, I will come and tell the Judge?'

"A. Yes, sir.

"Q. He didn't tell you how to decide the case?'

"A. No, sir, he never mentioned about it."

We consider the court—in the face of the general form of objection interposed—excluded from Galloway's answer above: (a) the reference to a "ten to two vote"; (R. 94) (b) "We decided to take one more vote and we voted again * * *"; and (c) "All twelve of us thought he was guilty, but it was on the question of the extent."

■ It was proper for the jury to state that it was hung, though not as to whether on guilt or punishment nor as to their numercial division. Galloway was quite certain the bailiff made no reference to the pecuniary expense of a protracted trial.

Cited to justify reversal for this irregularity are Taylor v. State, 18 Ala.App. 466, 93 So. 78, and Roberts v. State, 26 Ala.App. 331, 159 So. 373.

Consideration needs also to be given to the following civil cases: Kansas City M. & B. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65; Alabama Fuel & Iron Co. v. Rice, 187 Ala. 458, 65 So. 402; Pollard v. Williams, 238 Ala. 391, 191 So. 225; Driver v. Pate, 16 Ala.App. 418, 78 So. 412; and Barnett v. Patillo, 33 Ala.App. 599, 36 So.2d 450.

In Orr v. State, 269 Ala. 176, 177, 111 So. 2d 639, a trial judge's reference to the public expense was in at least one of five aspects of a verdict urging instruction. However, in 40 Ala.App. 45, 111 So.2d 627, are listed pro and con the cases where such

a reference was the sole factor. Ashford v. McKee, 183 Ala. 620, 62 So. 879.

We ascribe less coercive force to this remark coming from a bailiff than we would had it come from the sheriff or the judge. In Orr, supra, the judge's remark about public expense was not the sole ground for reversal.

In Taylor, supra, the sheriff told a deliberating juror that if convicted the prisoner would probably not be tried on two other charges. Also a showing was made that the sheriff told three of the jury that "the judge would not permit the jury to make a mistrial of this case," and the like.

We quote from the pertinent part of Judge Samford's opinion, Roberts, supra:

"It is also insisted that the conduct of the deputy sheriff in refusing to permit the jury to see the judge, upon their request, relative to the punishment to be fixed, is error. The jury should at all times during their deliberations have access to the judge for such additional legal instructions as they may require, and no sheriff or deputy having the jury in charge has any right to instruct them or to gainsay this right. The influence of such officer's communications, acts, or declarations to or in the presence of the jury will be credited with more effect than is accorded to those made by outsiders, and if such acts are reasonably calculated to prejudice defendant a new trial will be granted. 16 C.J. 1165 (2673). The act of the deputy in the instant case may have influenced the jury to have resorted to a quotient verdict, rather than to continue deliberation in an effort to arrive at a verdict which would reflect the true findings of the whole jury. * * *"

III.

The bailiff who keeps the jury, if they choose to retire, should be sworn by the trial judge or the clerk substantially thus:

"You do solemnly swear that you will keep this jury together in some private

and convenient place, that you will not permit any person to speak, or communicate with them, nor do so yourself, except [to ask them whether they are agreed upon a verdict or] by order of the court. That you will return with them into court when a verdict has been reached, or you are ordered by the court so to do, and that you will not communicate to any person the state of their deliberations. So help you God."—Jones, Alabama Practice & Forms, § 18000.

See Jones, Alabama Practice and Forms, § 18000; Archbold, Criminal Practice and Pleading (8th Ed.) 555; and Directions for Holding Court in Colonial Georgia, 2 American Journal Leg.Hist. 321, 325, 326, 338, 339 and 342.

In Arnett v. State, 225 Ala. 8, 141 So. 699, the high sheriff who kept the jury overnight got a city policeman to help him. This man was not sworn. Appellant cited Nicholson v. State, 38 Fla. 99, 20 So. 818, as demanding a reversal. We do not read the *Nicholson* opinion as such authority.[1]

In Miles v. State, 261 Ala. 670, 75 So.2d 479, Mr. Justice Clayton, writing for a 6–1 court, collected and analyzed many of the Alabama cases bearing on the prejudice from a law officer testifying for the prosecution being put in charge of a jury. Redus v. State, 243 Ala. 320, 9 So.2d 914, was such a case.

■ The opinion in *Miles*, supra, shows, more activity tending to influence a jury to convict than the remark here considered. We cannot approve of any remarks by the bailiff to the jury except as allowed by his special oath, supra.

■ There are two reasons for this particular instance being an impropriety: (1)

the public expense is extraneous to the issues tried; and (2) courts are indispensable to sovereignty and our Constitution assures the right to trial by jury. Public expense is not to be weighed against the merits of the palladium of our liberties.

■ This impropriety raised a presumption (like that arising from a separation of the jury) which the State must rebut to show that the verdict was not the result of the bailiff's remark.

■ We consider that the State's counter evidence on the motion for new trial did overcome the presumption of jury tampering.

It is undisputed that all Stone said in substance at the most was, "You all go back in there and decide the case, if you can. It is costing the county a lot of money."

There was no reference to the judge—as might have once occurred in 18th Century England—locking the jury up indefinitely or for any specified time. There was nothing to impute obstinacy, stupidity or mala fides to the jury, or to any of them; no singling out of a minority as recalcitrant obstructionists.

All jurors know or should know that their fees and judicial salaries are a public expense. Though it is improper to refer to them as a factor in deliberating, these sums are but trifling withal when compared to the outlays for roads and schools.

On this single point, we hold that in spite of error by the bailiff, nonetheless the trial judge was justified in not setting aside the verdict on the principle of error without injury.

Supreme Court Rule 45 expressly states in part that no "new trial [may be] granted * * * by any other court of this

1. Our statute, Code 1940, T. 13, § 186, as amended, has received a variant construction from that put on an analogous Florida law cited in *Nicholson*, supra. Ward v. State ex rel. Goldsmith, 17 Ala. App. 170, 82 So. 660, says the circuit judges have a share with the sheriff in the process of engaging bailiffs. Cook v. State, 269 Ala. 646, 115 So.2d 101 (hn. 8), puts the power to choose bailiffs (by name—not number) solely in the court's discretion.

state * * * for error as to any matter of * * * procedure, unless in the opinion of the court to which * * * application [for new trial] is made * * * it should appear that the error * * * has probably injuriously affected substantial rights of the parties."

The application for rehearing is

Overruled.