281 So.2d 652

**James Larry DOUGLAS, alias**

**v.**

**STATE.**

**3 Div. 133.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

No brief for appellant.

William J. Baxley, Atty. Gen., and J. Parke Keith, Sp. Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Murder in the first degree; sentence, life imprisonment.

This appeal was submitted without an appellant's brief, but the record shows that he is not indigent.

I

The State's evidence showed that at about 6:30 in the morning, July 6, 1971, James Larry Douglas shot and killed one Asa Aaron "Ace" Williams in the presence of several eyewitnesses. Appellant's defense was not guilty by reason of insanity.

On the morning in question, Douglas was looking for his estranged wife and stopped at Fat Man's Cafe where she had worked. The night before they had had a violent argument and fight over some photographs of his wife's present or former paramour.

As the appellant got up to the door of the cafe, he saw the man, one Williams, whose photographs had provoked him. Douglas returned to his automobile, got his shotgun and returned to the cafe. Opening the door he aimed the shotgun at Williams and fired.

Though mortally wounded, Williams fled to the kitchen. Douglas followed into the kitchen where he found him lying unconscious on the floor. Douglas then fired another shot to Williams' head. Douglas asked the proprietor to call the police, but first phoned his mother to tell her what he had done.

The defense introduced testimony concerning the appellant's family history, which revealed that relatives in both his mother's and father's families had extensive histories of mental illness. Two experts, a psychiatrist and a psychologist, opined that he was insane at the time of the killing due to marital discord between him and his wife.

## II

The appellant had objected to the State's introduction of a photograph which depicted the location of the victim's unsightly remains. The court had sustained two previous objections of appellant concerning photographs of the deceased. The appellant argued, as he had previously, that the photograph was introduced solely to create bias and inflame the minds of the jury. The tests for the admission of a photograph in a criminal case are that the photographs must tend to prove or disprove some disputed or material issue, or to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered. Baldwin v. State, 282 Ala. 653, (Hn. #1), 213 So.2d 819.

Likewise, photographs of the scene are admissible in evidence that the jury may get a correct idea of the entire surroundings. Pilley v. State, 247 Ala. 523, 25 So.2d 57; Blue v. State, 246 Ala. 73, 19 So.2d 11.

Though the instant record contains only a black and white xerox copy of the colored photograph in question, it clearly is ghastly; but, gruesomeness is no grounds for excluding this type of evidence, if relevant. McKee v. State, 33 Ala. App. 171, 31 So.2d 656. The fact that such evidence is merely cumulative of detailed oral testimony does not affect its admissibility. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563. This photograph was properly admitted into evidence notwithstanding the unpleasant subject matter. We cannot, and should not, gloss over the fact that violent death is itself loathsome.

## III

In his motion for a new trial the appellant argued that the court committed prejudicial error by placing the jury in the overnight custody of the sheriff of Escambia County and his wife. The court had appointed the sheriff and his wife as special bailiffs to be with the jury during the jury's overnight stay at the local inn.

Title 13, § 186, Code 1940, as amended has been construed to mean that "the appointment of bailiffs is within the trial court's discretion." Cook v. State, 269 Ala. 646, 115 So.2d 101. Hence, unless abuse of that discretion can be shown, the court's ruling will be upheld.

The language of § 97, T. 30, Code of 1940, as amended, plainly states that:

"Whenever a jury is by order of the court, kept together without separation during any night, * * *, it is the duty of the sheriff, with the approval of the court, * * * to provide for the jurors, * * *."

Neither this statute nor any other statute specifically excludes the sheriff from taking custody of a jury. Ordinarily, the

sheriff or his deputies are the proper officers to have charge of the jury during their deliberations. Harris v. State, 233 Ala. 196, 172 So. 347.

Neither the sheriff nor his wife had been material witnesses, nor had they participated at any stage in the prosecution. We find no error.

## IV

The record does not disclose that either the sheriff or his wife took the bailiff's oath.

Bailiff (from the French *baillier* or *bailler*, to hand over) in law signified a keeper or prosecutor. A trial court's bailiff is a sworn servant who has the special duty of guarding and protecting juries during their deliberations from improper instructions or messages or contacts. The Saxon term was *reeve*, which shows the closeness to the sheriff or shire reeve. Ward v. State ex rel. Goldsmith, 203 Ala. 306, 82 So. 662. Cf. 23 Halsbury's Statutes of England (2d ed.) Sheriffs and Balliffs 295. "Duties at * * * Quarter Sessions"—* * * to * * * look after the jurors." See Code 1940, T. 13, § 186.

Jones, Alabama Practice & Forms § 1800 gives the bailiff's oath. See Gregg v. State, 43 Ala.App. 538, 195 So.2d 803.

Taking charge of all juries constitutes a part of a sheriff's duties. Code 1940, T. 30, § 97. Therefore, as to him a special oath to discharge a particular duty is redundant when he is already sworn to discharge his whole duty.

"* * * One of the objects of administering the special oath to officers having charge of juries, in ancient times, appeared to be, to secure an observance of those senseless and harsh measures which looked oftentimes to the compelling of a verdict by physical suffering, rather than a conviction of reason, which both officer and jury were disposed to

disregard. That has passed away, and with it the means resorted to, to enforce it. * * *" Davis v. State, 15 Ohio 72.

However, the sheriff's wife does not fall within the above cited statute which would exempt her from having to take an oath. Arnett v. State, 225 Ala. 8, 141 So. 699, was a case where the sheriff who kept the jury overnight got a city policeman to help him. The policeman was not sworn. Our Supreme Court, in holding that it was not error said that:

"While the officer was not a sworn bailiff or deputy sheriff, and while it is advisable that he shall be such, we do not think that it is absolutely necessary that he be sworn."

The former Court of Appeals is on record as recommending that the bailiffs should be sworn. Gregg v. State, 43 Ala.App. 538, 195 So.2d 803. In the instant case, there is no claim of improper conduct on the part of the bailiffs; therefore, reversible error will not be presumed. The burden is upon the appellant to show injury. Aaron v. State, 273 Ala. 337, 139 So.2d 309.

## V

In ground eight of appellant's motion for a new trial, he assigned the following as error:

"For that the foreman of the Jury, James B. Clark, did not disqualify himself as a Juror in that his son-in-law is a member of the Police Department which arrested and charged the defendant with the offense for which he was tried."

Appellant presumably would imply this juror either withheld this information or did not give the correct answer when questioned as to his relationship to law enforcement officers. The record does not disclose if any questions were asked by either the trial court or appellant's counsel as to the jury qualifications. Yet, one can assume that some questions were asked be-

cause T. 30, § 6, Code of 1940 provides that:

"It is the duty of the court, before administering the oath prescribed by law to any grand, petit, or tales jurors, to ascertain that such juror possesses the qualifications required by law; and the duty required of the court by this section shall be considered imperative."

 Clearly the above statute dictates that the trial judge is required to qualify the jury. But, the Supreme Court in Washington v. State, 81 Ala. 35, 1 So. 18, said:

"But very many things occur in the trial of such causes of which no record need be made, and yet they require affirmative action of the court, or of some ministerial officer. Ascertaining the qualifications of jurors is an example of this class of judicial questions, and service of a copy of the venire, and of the indictment on the defendant, is an illustration of ministerial service of which the silence of the record raises no presumption of error. If such duty be omitted, the objection must be shown to have been taken in the court below. When the record is silent on questions of these classes, this court presumes the trial court and its officers did their duty."

See also Winn v. State, 44 Ala.App. 271, 207 So.2d 138.

In Aaron v. State, 273 Ala. 337, 139 So. 2d 309, our Supreme Court, in discussing appellant's failure to ask or object to qualifying questions to the jury, said:

"The rule is that in failing to use reasonable diligence in testing jurors as to their qualifications or grounds of challenge, there is a waiver of the ground of challenge; and the defendant cannot sit back and invite error because of a juror's qualification. Batson v. State, 216 Ala. 275, 113 So. 300; Beasley v. State, 39 Ala.App. 182, 96 So.2d 693.

The rule was applied where it was later discovered that one of the jurors should not have served on the jury—in the Batson case, he was an alien, and in the Beasley case, he had been convicted of a crime involving moral turpitude. But here, there has been no showing of any incapacity to serve or the failure to answer any question correctly."

 In the instant case, [as in *Winn*, supra], the record discloses no objection by appellant to the trial court's alleged failure to qualify the jury. Neither does the record show whether or not the parties exercised the right to examine the jurors as authorized by T. 30, § 52, Code of 1940, when by so doing any disqualification would probably have been ascertained. Such failure to question the jurors waives the peremptory right of the parties to have a new trial. *Winn*, supra. Also in Brackin v. State, 31 Ala.App. 228, 14 So.2d 383, the conviction was affirmed by the former court of appeals, even though a city detective was a member of the jury.

We consider that *Winn*, supra, is dispositive of this issue. Therein the court held, in a similar situation,

"It is not necessary that the record show that counsel was given the opportunity to examine the jurors prior to empaneling. James v. State, 53 Ala. 380; Washington v. State, supra; Batson v. State, supra. We conclude therefore that, if counsel would question the jurors' qualifications, he must do so prior to the empaneling and swearing in of the jury; and that failure to exercise this right or make a timely objection waives his right to question the jury's qualifications and appellant cannot complain on motion for a new trial."

## VI

The appellant contended in Ground 9 of his motion for a new trial that the excusing of veniremen by the trial court before the day of trial without the knowledge or con-

sent of the defendant constitutes reversible error.

In order to resolve the above issue, a construction of §§ 5, 63, and 64 of T. 30 of the Code is necessary. The pertinent parts of those sections are as follows:

§ 5—"The court may excuse from service any person [or persons] summoned as a juror if he is disqualified or exempt, or for any other reasonable or proper cause, to be determined by the court."

§ 63—"Whenever any person stand[s] indicted for a capital felony, the court must, * * * and shall cause an order to be issued to the sheriff to summon all persons therein named to appear in court on the day set for the trial of the defendant, * * *"

§ 64—"On the day set for the trial if the cause is ready for trial, the court must inquire into and pass upon the qualifications of all the persons who appear in court in response to the summons to serve as jurors, * * *."

The above sections of T. 30 have been construed by the Alabama Supreme Court in Stinson v. State, 223 Ala. 327, 135 So. 571. In *Stinson,* the court said:

"While section 8614 [T. 30, § 5, Code of 1940] brought forward from the Code of 1907, and long a part of the law, providing: 'The court may excuse from service any person summoned as a juror if he is disqualified or exempt, or for any other reasonable or proper cause, to be determined by the court,' is not to be overlooked, it was not incorportaed in article 7, c. 311 (Code 1923, p. 193, § 8644 et seq.) [Code of 1940, T. 30, § 63] dealing especially with the 'Mode of Selecting and Empaneling Juries in Capital Cases,' and cannot be construed as emasculating or modifying the provisions of sections 8644 [§ 63], 8645 [§ 64], which require the court to order the persons constituting the venire for the trial of capital cases, summoned to appear on the day the case is set for trial, and require the court, *on the day set for the trial,* if the cause is ready for trial, to inquire into and pass upon the qualifications of all the persons appearing in response to the summons, where the defendant must be present with his counsel and where he is given an opportunity to participate in the selection of the jury for his trial, and reserve questions for review by appeal.

"That statute (section 8614) [T. 30, § 5] has a field of operation, and authorizes the court, in the process of impaneling the regular juries, to excuse a juror from the regular service, still when construed in pari materia with sections 8644 [§ 63], 8645 [§ 64], the power to excuse from service on a special venire in a capital case must be exercised by the court on the day set for the trial during the process of qualifying and organizing the jury for the defendant's trial, when defendant is having his day in court, and may know the facts underlying the court's rulings and may protect his interest by proper exceptions.

"While the matter complained of is not a mere clerical error, but an error committed by the court in excusing jurors summoned for defendant's trial, in defendant's absence, yet, in the absence of an objection to proceeding with the selection of the jury because of the absence of the jurors excused, this action of the court cannot be made a predicate for reversible error. Edgar v. State, 183 Ala. 36, 62 So. 800; Irwin v. State, 220 Ala. 160, 124 So. 410; Carmack v. State, 191 Ala. 1, 67 So. 989; White v. State, 201 Ala. 387, 78 So. 449; Zininam v. State, 186 Ala. 9, 65 So. 56; Spooney v. State, 217 Ala. 219, 115 So. 308; Taylor v. State, 222 Ala. 140, 131 So. 236." [Bracketed matter added.]

▆ In the instant case, the trial court excused ten veniremen before the day of trial without the knowledge or consent of the defendant; but, the defendant failed

**608**

to object to the court's action. However, the appellant argues that the names were not called by the clerk; therefore, he did not have an opportunity to object. T. 30, § 63, dictates that a list of the veniremen will be furnished to the defendant at least one day prior to the day set for trial. By appellant's own admission, he knew that after the clerk had finished calling the venire that sixteen names on the list had not been called because he had a copy of the venire list. The appellant could have at that moment objected to the action taken by the court in not calling all the names on the venire list. It is well settled that where appellant fails to make a timely objection to an erroneous court procedure, he is bound by his inaction. Therefore, appellant's contention is disposed of by *Stinson*, supra. See also Davis v. State, 259 Ala. 212, 219, 66 So.2d 714.

We have carefully considered the whole record under Code 1940, T. 15, § 389 and conclude that the judgment below is due to be

Affirmed.

All the Judges concur.