## SPRADLING & THOMAS *vs.* THE STATE.

1. The proviso to the eighth section of the act of the 14th Dec. 1819, relative to the alternation of the Judges of the Circuit Courts, is directory merely and does not deprive them of the power to hold successive courts in any one or more of the counties of their respective circuits.

2. Whether or not a judge is incompetent to hold the court in which he is at the time presiding, is a question that cannot be raised by plea in a proceeding between the public and a third party.

3. An indictment charging a conspiracy to commit a burglary, with intent to steal the goods of S, is supported by proof that the goods belonged to S. and another, who is his dormant partner.

Error to the Circuit Court of Lauderdale.    Tried before the Hon. Sydney C. Posey.

THE plaintiffs in error were indicted for a conspiracy to commit a burglary by breaking and entering the store house of one Nathaniel B. Sturdevant with *intent to steal, &c. the goods* of the said Sturdevant.    The accused filed two pleas to the indictment, which were demurred to and the demurrer sustained. These pleas are sufficiently recited in the opinion of the court. On the trial the proof tended to show that the goods which the accused conspired to steal were the property of said Sturdevant and another person, who was his dormant partner, and thereupon the counsel of the accused asked the court to charge the jury that if they believed from the evidence that the goods, which the defendants conspired to steal, were not the sole property of Sturdevant, but were the property of said Sturdevant and another, who was his dormant partner, they could not find the defendants guilty, which charge the court refused, and the defendants excepted.    The ruling of the court and its refusal to charge as requested are now assigned as error.

L. P. WALKER, for the plaintiff:

1. The facts disclosed by the pleas of the defendants below, admitted by the demurrers and shown also by the record of the organization of the court at the April term 1849, which accompanies and is made part of the record in this case, clearly establish the incompetency of the presiding judge to try the defend-

Spradling & Thomas v. The State.

ants or render judgment against them. The constitution of the State provides that " the Judges of the several Circuit Courts may hold courts for each other when they may deem it expedient, and *shall do so* when directed by law."—Art. 5, §7. They were "directed by law" to do so by the act of 1819, which provides they shall " so alternate that no one judge shall hold the courts of the same circuit for two courts in succession, unless called on to do so by the judge whose duty it may to hold such circuit on account of sickness or other inability to attend."—Clay's Dig. 295, § 35. The effect of this act, when considered in connection with the clause of the constitution refered to, is the same as if it had been incorporated in that instrument as a part of it. " When directed by law the judges shall alternate;" of course it is meant they *shall* alternate in the *mode* which may be pointed out by law. The act of 1819 is therefore equivalent to a positive *constitutional* mandate that one judge shall not hold the same court twice in succession unless compelled to do so by circumstances which there is no pretence existed in this case. The stringent terms of the act, the important public policy upon which it was founded and its close connection with the clause of the constitution refered to—the act being the very *law* there refered to—allow of no pretence that this is a merely *directory* statute. The incompetency of the presiding judge was properly raised by both of the pleas filed by the defendants below. Lyon v. State Bank, 1 Stew. 442, when the facts of the case and the opinion of the court are scanned, has no bearing upon the point. At any rate, whatever may be the law as to the other pleas, the plea in abatement to the array of the grand jury was right. Wherever a grand jury is from any cause improperly organised, this is the mode of taking advantage of the defect. When the grand jury is constituted under the directions of an unauthorised person—is empanelled, charged and sworn by an individual not competent to sit as a judge upon the occasion, it is certainly not a lawful grand jury, and any indictment found by it is worthless : And a plea in abatement of such indictment to the array of the grand jury is clearly proper. That the presiding judge below was incompetent to sit, see Blackmon v. State Bank, 3 Pike, 309; Brown v. Fleming, 3 ib. 284 ; Dunn v. State, 2 ib. 229; Peter v. State, 6 How. (Miss.) 326; State v. Choate, 11 Ohio, 511 ; Gollusha v. Butterfield, 2 Scammon,

29

·227. 3 Pike, .309, is perfectly in point. It decides the exact converse of the proposition made by the judge below. The legislative construction of the act of 1819, as shown by the special act relieving the judge of the Mobile circuit from the necessity of alternating, confirms the view here taken as to the stringency of its provisions. "*Contemporanea expositio fortissima est in lege.*"—Clay's Dig. 292, § 19; Acts 1843, 93, § 3.

2. If the judge below was incompetent to try the defendants, it is clear he had no jurisdiction of the case either as to the subject matter or person. The whole proceeding therefore is *coram non judice* and void.—Taylor v. Doremus, 1 Harr. 473; State v. Graves, 8 Miss. 148; Lenox v. Grant, ib. 254; Morrison v. McDonald, 8 Shep. 550. Consequently there was error in rendering judgment against the defendants.

3. The charge asked by the defendants below and refused by the court should have been given. Even if it be granted that it was unnecessary in this indictment to allege the ownership of the goods which defendants conspired to steal, yet as the State has *elected* to make that allegation and has named a particular person as the owner of the property, the allegation becomes thereby a material one, and the State was bound to prove it as made.—Commonwealth v. Harley, 7 Metc. 506; U. States v. Port. 3 Day 283-6; 1 Chitty's Crim. Law, 169-556-7. But that the allegation of ownership was essential in this indictment, see 2 Russell Cr. 694-5, (Am. ed. 1845); 4 Metc. 111. Where goods stolen (or conspired to be stolen) are the property of partners, *all* the partners must be correctly named in the indictment, otherwise the defendant will be acquitted. And this is so though the goods are in the custody of one of the partners.—Arch'd Cr. Pl. 30-168; 2 Phillips Ev. (C. & H. n.) 508; Hog v. State, 3 Blackf. 326; Commonwealth v. Trimmer, 1 Mass. 476; State v. Ryan, 4 McCord, 16; Wharton Cr. Law, 405; 2 Russell Cr. 101. The fact that the partner not named was a dormant partner is immaterial. The indictment must allege the ownership as it is *in fact* and not in appearance. The question is, does evidence showing the goods to be the property of *two* persons conform to the charge that they were the property of one of them? Upon principle there can be no doubt that the variance was fatal. To whatever extent and for whatever purpose any one has a property in a thing stolen, to

such extent and in respect to such purpose it is stolen *from him,* and a theft of property owned by more than one person is a theft from *all* the proprietors or partners.—1 Hale's Pleas Crown, 512, n. 13, (Am. edit. 1847.)

ATTORNEY GENERAL, for the State.

1. The first point presented by the record is,. were the demurrers properly sustained by the court below to the pleas to the jurisdiction of the circuit judge who tried the case, and the array of the grand jury who found the bill of indictment against the plaintiffs in error; or in other words, is it error for a circuit judge to hold two successive courts in any county? The constitution prescribes there shall be appointed a judge *for each circuit,* who shall hold courts for each other when they shall deem it expedient, *and shall do so when directed by law.*—Article 5, § 5, 7. There is nothing in the constitution of the State compelling the circuit judges positively to interchange or alternate, but leaves it discretionary with them except when "*directed by law.*" Have they been compelled or directed to do so by law? The only direction to them on this subject is to be found in the proviso of the act of 1819, (Clay's Dig. 295, § 35,) and that I contend does not contain a positive injunction to alternate or interchange with each other, but only declares that nothing in that act shall be so construed *as to prevent it.* That proviso when properly construed would read thus: "*Provided,* that nothing in this act contained shall be so construed as to prevent the judges holding the courts aforesaid from so alternating that no one judge shall hold the courts of the same circuit for two courts in succession, unless called on so to do by the judge whose duty it may be to hold such circuit, on account of sickness or other inability to attend." If this is in effect and substance a correct reading and construction of that proviso, then there is nothing which positively commands or compels an interchange so as to take away the jurisdiction or render incompetent any judge who shall preside at two successive courts. It is merely directory and intended to be left to the discretion of the judges. An opposite construction would work great injury, in some instances, both to public and private interest, for the single reason that it might so happen that a judge might not be able to get another judge to interchange with him, and that

Spradling & Thomas v. The State.

too not from sickness or inability on the part of the judge whose duty it was to hold such court, to attend. I refer the court to Knox v. Bierne, &c. 4 Pike, 460, as a case having some analogy to this. If a judge is incompetent to hold successive courts, can it be objected to his presiding at the trial by way of plea? Lyon v. The State Bank, 1 Stew. Rep. 442; Beard v. Cameron, 3 Murph. 181.

2. The proof that the goods and chattels were the property of Sturdevant and his dormant partner, (whose name appeared to be unknown,) sufficiently supported the allegation charging the property in Sturdevant alone, for Sturdevant had the special property in the goods.—2 Russ. on Cr. 159; 1 Chitty Pl. 13; Roscoe, 515; Coll. on Partn. 598; Archb. 177; Clarkson v. Carter, 3 Cow. 85; Lord v. Baldwin, 6 Pick. 548; Shropshire v. Sheppard, 3 Ala. 733. The ownership of the goods and chattels need not be stated in burglary, and if so stated need not be proved.—Arch. 298; Spencer v. State, 13 Ohio, 401.

PARSONS, J.—The plaintiffs in error were convicted in the Circuit Court of Lauderdale county of a conspiracy to commit the crime of burglary, by feloniously and burglariously breaking and entering the store-house of one Nathaniel B. Sturdevant, in said county, in the night time. The plaintiffs in error filed two pleas to the indictment. By the first they alleged " that this court ought not to have or take further cognizance of the charge in the said indictment above specified, because they say that the Hon. Sydney C. Posey, now presiding as judge in this court, is by law incompetent to try and determine the said indictment; because the said Hon. Sydney C. Posey, as presiding judge, did hold the last term of this court, to-wit, the term held on the first Monday after the fourth Monday in March 1849;" and the plea further alleges that Judges of the Circuit Courts here are not competent by law to hold two courts in succession in the same circuit, unless called on to do so by the judge whose duty it was to hold such circuit, on account of sickness or other inability to attend, and the plea states formally that no cause of that kind existed. The second plea alleges that the grand jury that found the indictment was organised at that term of the court by the same judge, and then his supposed incompetency is alleged, as in the first

plea, as an objection to the grand jury. The solicitor demurred to each of the pleas and the demurrers were sustained by the same judge at the same term of the court; and now the main question in the cause is, was it right to sustain the demurrers? This question leads us to consider the constitution so far as it relates to it, and the statute made in pursuance thereof. The authorities to which we have been refered by the counsel for the plaintiffs in error have been examined and attentively considered; and although this opinion is formed in view of them, it is not necessary that they should be particularly commented on.

The Circuit Courts have original jurisdiction, under the constitution, of all matters of litigation, whether criminal or civil, with certain exceptions which need not be noticed in this place; and the State is divided into circuits by authority of the constitution, and it provides that there shall be appointed a judge for each circuit, who shall after his appointment reside in the circuit for which he may be appointed; and further, according to the constitution, the Judges of the Circuit Courts are to be conservators of the peace within their respective circuits. It is further provided by the constitution that the judges of the several Circuit Courts may hold courts for each other when they may deem it expedient, and shall do so when directed by law. From this it is evident that each judge of the Circuit Courts had plenary jurisdiction within his circuit, and that he might hold all the courts thereof; but that he might hold courts within another circuit, when deemed expedient, and should do so when required by law. There is nothing in the constitution to authorise the idea that a judge's jurisdiction within his own circuit was on any contingency to cease for a moment; but it is clear that additional duties might be performed by him, and in the event of a law to that effect, should be performed by him. This brings us to the act of 1819, the proviso of which is relied on by the counsel of the plaintiffs in error, and which is in these words: "*Provided*, that nothing in this act contained shall be so construed as to prevent the interchange of ridings by such judges in their several circuits in the manner hereinafter pointed out, that is to say, the judges holding the courts aforesaid shall so alternate that no one judge shall hold the courts of the same circuit for two courts in succession, unless called on to do so by

the judge whose duty it may be to hold such circuit, on account of sickness or other inability to attend."—Clay's D. 295, § 35. We think this proviso was intended to operate on the judges only, and not to confer any rights upon the parties, more especially those in whose causes the judge had no manner of interest. The proviso, as we think, was merely directory; and we understand that the circuit judges have for so long a time and so frequently acted upon this construction that at this late day we are not willing to declare their acts to be void, for this construction has from the first been plausible at least. Under any other construction it would be necessary to consider the constitutionality of the proviso, which as a statute taking away a jurisdiction given by the constitution, would be void. It is not denied by the pleas but that Judge Posey was the proper judge of that circuit. If he had been actually exercising the duties of that office only by color of right, it is at least questionable whether third persons or individuals of any class could take advantage of the question of his legal right to do so. S. C. Posey was even at that time judge *de facto*, at least of that circuit. He is not a party to this record and cannot be legally heard in the discussion of these pleas, but our decision would as effectually decide on his authority to act in the circuit as a judge at that time as if he were a party. Hence the question whether an officer holds *de facto* or *de jure*, is to be made by a proceeding directly against him and to which he is a party.— Fowler v. Bebee et al. 9 Mass. R. 231. And this principle has been thought to apply to a judicial officer in questions only concerning third persons or the public.—McInstry v. Tanner, 9 Johns. R. 135; The People v. Collins, 7 ib. 552. Besides there are English and Pennsylvania authorities upon the general question, which need not be noticed. Our predecessors had occasion heretofore to look into the question whether or not a plea objecting to the judge personally can be sustained.—Lyon v. The State Bank, 1 Stew. 442. There is nothing in that case against our conclusion in this, but rather for it. There is a North Carolina case which deserves to be noticed—Beard v. Cameron, 3 Murphey's R. 181. In that State the Governor with the advice of the Council of the State, might fill certain vacancies, including those of the judges, by granting a temporary commission; which vacancies were to occur during the

recess of the General Assembly.   One of the judges died, not during the recess, but during the session of the Legislature, and Gov. Branch filled the vacancy by a temporary appointment. The person appointed by Gov. Branch met, in a civil suit, with a state of pleading which required him to decide the question of his right to hold the court.   In that case  Judge Henderson, of the Supreme Court, whose opinion was concurred in by the court, said—"It is, to my mind, a very strange and incongruous proposition that an answer is required to be given by A. B. whether he be a judge, which answer he cannot give, unless he be a judge.   I plead that you are not a judge: A judge alone can decide the plea; and I call on you to decide.   This cer-tainly cannot be the way of testing Judge Baker's appointment. The way is very simple, but it is not for the court to point it out.   It is said that the extent of the jurisdiction of all courts is settled by the courts themselves.   This is true; but then it must be remembered that in all such cases there is a court com-petent to decide, and it is called upon not to decide whether it is a court, but the extent of its jurisdiction."   In the present case, the court was called upon to decide whether at that time and place it was a court.   This it could not decide, unless it were " then and there" a court : which seems to prove that such a question could not be made before the judge himself, but if made at all, must be made against him by a direct proceeding in behalf of the State.   It is an affair between him and the State.

As to the next point, we are entirely satisfied that there is nothing in the defence, that there was proof tending to show that Sturdevant had a dormant partner in the house, mentioned in the indictment.

Let the judgment be affirmed.