115 So.2d 101

**E. L. COOK, alias,**

v.

**STATE of Alabama.**

**4 Div. 811.**

Supreme Court of Alabama.

Oct. 15, 1959.

Smith & Smith, Phenix City, and Walker & Walker, Opelika, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

LIVINGSTON, Chief Justice.

E. L. Cook was indicted and tried in the Circuit Court of Russell County, Alabama, for the murder of John Mancil. Defendant interposed a plea of not guilty. The jury returned a verdict of guilty of mur-

der in the first degree and fixed punishment at life imprisonment in the state penitentiary. The court adjudged and sentenced the appellant accordingly, and from such judgment this appeal is taken.

■ The judgment of conviction was entered on October 14, 1954, and an appeal was taken the same day. A motion for a new trial was filed on October 15, 1954, and was denied on June 28, 1955. The court reporter filed the transcript of testimony with the Clerk of the Circuit Court of Russell County on the 23rd day of July, 1955. The state has made a motion to strike the transcript of testimony in that it was not filed within the sixty days allowed for the taking of an appeal as provided for in Sec. 827(4), Title 7, Code of Alabama 1940, Cum.Pocket Part.

Although not controlling in this case, Sec. 827(4) has been amended several times, the last time by Act No. 97, Gen. Acts 1956, pp. 143–144. In pertinent part, it now reads:

"Section 6. The court reporter's certified transcript shall be filed with the clerk within sixty (60) days from the date of the taking of the appeal or within sixty days from the date of the court's ruling on the motion for a new trial, whichever date is later; * * *."

But the same result has been reached without benefit of the amendment. See Koger v. State, 38 Ala.App. 476, 87 So. 2d 552. The transcript of testimony was filed well within sixty days from the ruling on a motion for a new trial. The state's motion to strike is denied.

The state's evidence tended to show that on Sunday afternoon about 3:00 p. m., August 6, 1950, the deceased, John Mancil, and his uncle, William C. Rogers, visited the 601 Club in Phenix City, Alabama. The 601 Club was a membership club in Phenix City, and appellant was a partner in, and the operator of, the Club. The de-

ceased took part in a blackjack game and played for approximately 30 minutes. A discussion took place between the deceased and appellant, and the deceased left the game and the 601 Club. The deceased and Rogers rode around for awhile and returned to the 601 Club at approximately 6:00 p. m. During his absence, some alcohol was consumed by the deceased, but the testimony as to the quantity was in conflict. Upon returning to the 601 Club, the deceased purchased a half-pint of whiskey, sat down at a table and started to drink. After several drinks, deceased got up and engaged in a dice game. While so engaged, the deceased became involved in an argument, quit the dice game and returned to the table. At this point, the evidence is in conflict.

The state's evidence further tends to show that while the deceased was sitting at the table, the appellant approached with a pistol and after ordering the deceased and Rogers to get out, started shooting. The state's evidence further shows that neither deceased nor Rogers made a move toward appellant or threatened him in any way.

The defendant on the other hand contends that the deceased and Rogers were too drunk to shoot dice and were using profanity. The defendant asked them to "quiet down and quit cursing." When they persisted in their conduct, defendant went to the office, got his pistol, came back and said, "I have done asked you men to leave and I mean you are going to leave now." Then, according to appellant, the deceased stepped up with a chair in his right hand and Rogers had a knife in his right hand and a chair in his left hand. They started advancing on appellant who shot one time into a post. When that didn't stop them, he fired, killing the deceased and wounding Rogers. Appellant called an ambulance and the police, and when the Chief of Police arrived, surrendered to him.

Before proceeding to a discussion of the several propositions of law raised and argued for a reversal of this cause, and for a better understanding of this opinion, we think it not amiss to here state some of the background and uncontradicted facts in the case and facts within the judicial knowledge of this Court.

Albert L. Patterson, long a resident citizen of Phenix City, Russell County, Alabama, was the Democratic Nominee for the office of Attorney General of the State of Alabama, in the May 1954 Democratic Primary election. During his campaign for Attorney General, Patterson made statements and distributed literature over the State of Alabama and in Phenix City, Alabama, pledging to eradicate gambling and other vices in the state, and particularly in Russell County and Phenix City, Alabama.

Patterson was killed on the night of June 18, 1954, at about 9 o'clock p. m.

On June 25, 1954, the Chief Justice of this Court ordered that a special session of the Circuit Court of Russell County, Phenix City, Alabama, be held, beginning Wednesday, June 30, 1954, reciting that on account of the recent killing of Albert L. Patterson in Russell County, Alabama, it is advisable that a circuit judge outside of said circuit be assigned for duty to conduct the court at said session, and the public good requiring it, the Chief Justice ordered the Honorable Walter B. Jones, Judge of the Fifteenth Judicial Circuit, Montgomery, Alabama, to appear at Phenix City, Alabama, on Wednesday, the 30th day of June, 1954, to conduct the business of the court in said special session, which includes the empaneling of the grand jury for the purpose of investigating the death of the said Albert L. Patterson, and to empanel petit juries to serve at said special session and for the transaction of such other business of the court as may be presented to it, and reciting further that the Honorable Walter B. Jones shall have the full authority of the regular circuit judge of said circuit, and it shall continue until the business of the court is finally disposed of.

On July 9, 1954, the Chief Justice made another order which recites that:

"Whereas, a special session of the Circuit Court of Russell County, at Phenix City, Alabama, duly and regularly called, is now in session, and that Walter B. Jones, Judge of the 15th Judicial Circuit, has been ordered by the undersigned to conduct the business of said court in special session, and it further appearing that it is advisable for the public good that the said Walter B. Jones, Circuit Judge, be assigned additional authority and power to conduct any or all sessions of the Circuit Court of Russell County, Alabama, regular and special, it is, therefore

"Ordered that Walter B. Jones, as Circuit Judge appear at Phenix City, to conduct any or all business of said Circuit Court of Russell County, whether in regular or special session, at such time or times as the said Walter B. Jones, Circuit Judge, may deem necessary or expedient for the proper dispatch of the business and proceedings of said court, with the full authority and power of the regular circuit judge of said court, and until further orders of the undersigned Chief Justice of the Supreme Court of Alabama."

On July 17, 1954, Judge Jones discharged the regular grand jury theretofore empaneled, which was then in recess. On July 19, 1954, Judge Jones drew and ordered summoned jurors from which to select another grand jury and ordered them summoned for appearance at Phenix City on July 21, 1954. These jurors were served by H. Ralph Mathews, Jr., the then Sheriff of Russell County, Alabama. On July 21, 1954, a new grand jury was organized and

empaneled, and recessed until August 9, 1954.

On July 22, 1954, the Governor of Alabama, as Governor of Alabama and Commander-in-Chief of the Alabama National Guard proclaimed a state of qualified martial rule in Russell County, Alabama. The proclamation was as follows:

"Whereas, organized crime has for many years existed in Russell County, Alabama, particularly in Phenix City; and

"Whereas, a gang of men have conspired and are conspiring to thrive on the systematic exploitation of vice; and

"Whereas, the organized lawless activities of this gang continue to hamper the investigation of the murder and the ferreting out of the murderer of Albert Patterson and other crimes; and

"Whereas, there exists in said community a serious emergency, a defiance of the Constitution and laws of Alabama, a state of lawlessness, breach of the peace, organized intimidation and fear, and there is continued and imminent danger thereof, which the local peace officers are unable or unwilling to subdue:

"Now, Therefore, I, Gordon Persons, as Governor of Alabama and Commander in Chief of the Alabama National Guard, do hereby proclaim a state of qualified martial rule in Russell County, Alabama. *I Further* instruct the Adjutant General of Alabama, now actively on duty with units of the Alabama National Guard in Russell County, to take over, assume, supersede and exercise all the activities of the sheriff of Russell County, Alabama, the deputy sheriffs of said county, constable, Chief of police of Phenix City, Alabama, and all police officers of said city, and until further order from me to take and continue to take appro-

priate measures to suppress the state of lawlessness, intimidation, tumult and fear which reigns in said area."

On August 9, 1954, Judge Jones ordered highway patrolmen Holland and Stone to act as bailiffs for the grand jury.

On August 24, 1954, H. Ralph Mathews, Jr., resigned as Sheriff of Russell County, Alabama, and on the same date the Governor appointed M. Lamar Murphy as Sheriff of Russell County, Alabama, and his commission as such sheriff was issued on the 30th day of August, 1954.

On the 30th day of August 1954, the grand jury made a partial report to Judge Jones, containing the following:

"After hearing testimony from many witnesses upon the gambling phase of our investigation, we, as citizens of Russell County regret and blush to report that we are convinced from the evidence that this diabolical enterprise was deep-rooted and of many years duration in this locality. The testimony before us, some of which is based on gambling records, reflects that such demoralizing activity had been conducted on a professional basis for many years and grew to the extent that such had in fact become a recognized part of the economy of a minority group of citizens of Phenix City, which group, through cunning and unscrupulous leadership, have apparently been successful, in beating down and paralyzing the wholesome efforts of those who sought to oppose them.

"From testimony before us, it appears that there has been no *serious, continuous* or *respected* effort heretofore made on the part of law enforcement officials of Phenix City and Russell County to stamp out or abate this condition, but that passive acquiescence was given on the part of those in authority and charged under oath, as a matter of law, with the duty of stamping out this condition and bringing to

justice through criminal prosecution the infamous and nefarious individuals responsible for this condition. To us it appears that such condition has been allowed to remain and flourish unmolested until it has become an infamous and carbuncle on the society of the great State of Alabama, spraying its poisonous corruption and inviting an assemblage of criminals and creating an atmosphere for the commission of the other class of crimes, which usually follow when gambling affects an area. As a result of our investigations, we herewith return into this court 545 Indictments, which include both felony and misdemeanor charges."

Among the indictments returned by the grand jury was one charging H. Ralph Mathews, Jr., the Sheriff of Russell County, Alabama, with willful neglect of duty.

On December 8, 1954, the said H. Ralph Mathews, Jr., entered a plea of guilty to the charge of willful neglect of duty as such sheriff.

On December 9, 1954, Albert Fuller, the Chief Deputy Sheriff of Russell County, was indicted by the Grand Jury of Russell County for the murder of Albert Patterson, and was later convicted on said charge. Albert Fuller was also indicted by the grand jury on a charge of accepting a bribe in Russell County and tried and convicted on the charge.

Much more could be said, but clear enough, the foregoing indicates the utter chaotic and unlawful conditions existing in Russell County and Phenix City, Alabama, at the time the Governor proclaimed partial military rule in said county. It also clearly indicates that the sheriff and his deputies were wholly unable or unwilling to enforce the law.

When appellant's case was called for trial on October 4, 1954, with the Honorable Walter B. Jones presiding as circuit judge, the appellant objected "to being placed on trial at said term, and in the then presence," assigning orally and in writing 119 grounds of objection. The appellant also moved for a continuance, assigning the same grounds contained in the objection.

It is to be noted that the appellant made no application for a change of venue under Sec. 267 of Title 15, Code of 1940. As we understand appellant's objections to going to trial, they are based entirely on the results of the "Governor's Proclamation of Qualified Military Rule" and the Chief Justice's order directing Honorable Walter B. Jones to hold a special term of the Russell County Circuit Court, and his order authorizing him to preside at both the special and the regular term of the Circuit Court of Russell County, Alabama.

We do not have here a case in which it is urged that the state militia was in any way the trier of facts, nor that the militia either arrested or held the defendant, nor that he was being tried by a military tribunal as distinguished from the civil authorities. The record conclusively shows that the grand jury which returned the indictment against the appellant was drawn and organized by the orders of Judge Jones, and its members were summoned to appear by the the then Sheriff of Russell County, H. Ralph Mathews, Jr., that the petit jury was drawn by Judge Jones, and served to appear by M. Lamar Murphy, who was then the Sheriff of Russell County, and that Judge Jones empaneled the petit jury which tried the appellant. As we understand it, the defendant objected to being put to trial on two grounds: first, the presence of the Honorable Walter B. Jones, who appellant claimed had no authority to preside at said trial, and, second, the presence of the state militia in Russell County, Alabama, in Phenix City, and in the Russell County courthouse, in compliance with the Governor's Proclamation.

The court takes judicial knowledge of the several commissioned officers of the

**654**

state, the term of their office, extent of their authority, and the signature of clerks of the circuit courts. Buckner v. Graves, 210 Ala. 294, 98 So. 22. Averments inconsistent with such judicial knowledge are negatived thereby. State ex rel. Glenn v. Wilkinson, 220 Ala. 172, 124 So. 211, and cases therein cited.

As a consequence, this Court takes judicial knowledge that the Honorable Walter B. Jones, is, and was, at all times pertinent to this inquiry, a Judge of the 15th Judicial Circuit of Alabama. We also take judicial knowledge of the fact that H. Ralph Mathews, Jr., was the Sheriff of Russell County, Alabama, on June 18, 1954, the date on which Albert Patterson was killed, and that said Mathews resigned on August 24, 1954, and that M. Lamar Murphy was appointed Sheriff of Russell County, Alabama, by the Governor on August 24, 1954, and his commission was issued on August 30, 1954.

The record before us shows that M. Lamar Murphy, the then Sheriff of Russell County, summoned the petit jurors from which was selected the jury to try this appellant.

In essence, the objections concerning the order of the Chief Justice are to the effect that Judge Jones had no authority to preside over the Circuit Court of Russell County, Alabama.

There can be no sort of doubt that the Circuit Court of Russell County is, and was, a legal court. Indeed, no claim to the contrary is here made.

Circuit courts are always open for business within time limited by statute, and time for a transaction of business of court within such limits is left with the circuit judges. Title 13, Sec. 114, Code of Alabama 1940.

■ If, as argued, Judge Jones was not in fact a judge at the time and place, that proposition could only be raised or sustained in a direct proceeding against Judge Jones in which he is a party. Here, the objection was made to Judge Jones himself. Judge Jones was called upon to decide whether or not he was a qualified judge. This was a question only a judge could answer. The rule is that to determine the competency of the judge to act in a given case, the party objecting must bring an action in which the judge himself is a party. The question cannot be determined in a proceeding before the judge being questioned, or on appeal. Spradling v. State, 17 Ala. 440; Winn v. Eatherly, 187 Miss. 159, 192 So. 431; Wright v. State, 3 Ala.App. 24, 58 So. 68.

■ Aside from this procedural question, and laying to one side the question of the legality vel non of the orders of the Chief Justice, Judge Jones being the duly elected and qualified Judge of the 15th Judicial Circuit, his jurisdiction as a circuit judge is coextensive with the state, and he has official authority and power in one county as in another. City of Mobile v. Grayson, 220 Ala. 349, 125 So. 221; State ex rel. Montgomery v. Merrill, 218 Ala. 149, 117 So. 473; and Board of Education of Escambia County v. Watts, 19 Ala.App. 7, 95 So. 498. It is, therefore, clear enough that there is nothing in the record to show that Honorable Walter B. Jones was not legally authorized to preside over the Circuit Court of Russell County, Alabama, at all times pertinent to this inquiry.

■■ So far as the legality of the Governor's Proclamation is concerned, the defendant is in no position to raise that question unless he is affected by it. Here, as stated above, for aught appearing, the state militia, under the Governor's Proclamation, has not dealt with the defendant in any manner whatsoever. But appellant insists that his constitutional rights will be violated if he is put to trial while the state militia is on duty in Russell County under the Governor's Proclamation.

Appellant's grounds for objecting to being put to trial, so far as they were based on the Governor's Proclamation, seem to take the position that he was denied a

trial by due process of law guaranteed him by both the state and federal constitutions. Specifically, he argues that the Governor's Proclamation deprived the court of the arm of a civil sheriff and that the court cannot constitutionally function without a sheriff. The position cannot be sustained for several reasons. First, M. Lamar Murphy was the Sheriff of Russell County when the defendant was tried, and was appointed by the same Governor that issued the proclamation after Ralph Mathews, Jr., had resigned the office of Sheriff of Russell County. The record clearly demonstrates it, and moreover, we do judicially know it. In the second place, if Military officers had wrongfully and illegally intruded into and usurped the office of Sheriff of Russell County, quo warranto was the proper method of attack and not a mere objection to being put to trial. Furthermore, we are cited to no authority, nor has our search revealed any, to the effect that a circuit court cannot constitutionally function without the aid of a sheriff.

Another argument is that the presence of the state militia in Phenix City and Russell County so intimidated and overawed the court, the court officials, and the public generally, to such an extent that the appellant was denied a fair trial by due process of law.

The simple answer to this argument is,— a change of venue to another county. The appellant did not apply for such a change of venue. Presumably, he was willing to speculate on a favorable verdict of a jury in the county of his residence and where the crime for which he was tried took place. Others charged with crime by the same grand jury which indicted this appellant were granted a change of venue and were tried elsewhere.

The appellant attempts to put the burden on this court of deciding as an abstract proposition of law whether or not the proclamation of the Governor was legal. That question is not presented to this Court under any legal procedure of which we are aware.

■ It is well settled that under the procedure of this jurisdiction the continuance of a cause is lodged in the discretion of the trial court, and we will not review the exercise of that discretion unless there is a palpable abuse of it. Ala.Dig.Criminal Law ⟷586. Upon the record before us, we cannot say that the trial court abused his discretion in this case.

■ Judge Jones appointed Stone and Holland, Highway Patrolmen, to attend the grand jury as bailiffs. Sec. 186, Title 13, Code of 1940, provides that the sheriff of the county must appoint one person to serve as bailiff of the grand jury. This Court has held that this section allows sheriffs no discretion and leaves appointment of bailiffs solely to the court's discretion. Ward v. State ex rel. Goldsmith, 17 Ala.App. 170, 82 So. 660, certiorari denied 203 Ala. 306, 82 So. 662. See also Ex parte Strobach, 49 Ala. 443; Stokes v. City of Montgomery, 203 Ala. 307, 82 So. 663; State ex rel. Farmer v. Haas, 239 Ala. 16, 194 So. 395.

■ The appellant complains that the statutes were not properly followed in the drawing and summoning of the jurors in this case. Apparently fifty jurors had been summoned to appear at a session of the civil court on the same day appellant's trial was set. These jurors were discharged and not used, and fifty other jurors were drawn, plus thirty special jurors, making a total of eighty jurors drawn from which the state and the appellant could make their selection. In the case of Courington v. State, 20 Ala.App. 581, 104 So. 341, certiorari denied Ex Parte Courington, 213 Ala. 163, 104 So. 343, the trial court did not draw any regular venire for the week of that defendant's trial. The court held that the fact that no regular venire was drawn was not ground for reversible error. It will be noted that appellant had eighty names from which to choose. That number is well above the minimum set by the

statute. The motion to quash was properly overruled.

 Appellant's next objection is that it was error to allow the introduction of the bullet which wounded the witness Rogers and to allow a description by one Dr. Elkins as to where the bullet was lodged in the body of Rogers. The basis for appellant's objection is that it was not relevant to the issue of whether the appellant shot the deceased in self-defense. To this, we cannot agree. It was shown that Rogers was wounded during the same difficulty which caused the death of deceased Mancil. The evidence showed that he was shot during the same burst of gunfire. As a general rule, it is permissible to show all that transpired at the time of the difficulty as constituting part of the res gestae. The fact that the bullet which killed deceased was not introduced into evidence does not of itself render inadmissible a bullet fired during the same difficulty which struck another person. Grissett v. State, 241 Ala. 343, 2 So.2d 399; Moulton v. State, 19 Ala. App. 446, 98 So. 709, certiorari denied Ex Parte Moulton, 210 Ala. 656, 98 So. 715. We cannot say that the exhibition of the bullet which struck Rogers was to prejudice the jury against the defendant. Grissett v. State, supra; Floyd v. State, 245 Ala. 646, 18 So.2d 392; Langley v. State, 32 Ala.App. 163, 22 So.2d 920, certiorari denied 247 Ala. 176, 22 So.2d 923.

 Appellant next insists that because the state brought out from appellant's witness, Duffey Roberts, that he had heard a great deal about this case while Roberts served on the grand jury in October, 1950, the appellant should be allowed to introduce all that transpired at the grand jury session. We quote from the transcript:

"Q. I will ask you, under oath, if you have heard this case discussed in your presence anywhere? A. Yes sir.

"Q. Under what circumstances? A. Well, I was on the Grand Jury in 1950.

"Q. It was after August, 1950, was it? A. Yes sir, I think it was in October.

"Mr. Johnson: Stand aside."

The theory of the appellant is that the state having brought out a part of the transaction with respect to the grand jury of 1950, the appellant on redirect examination was entitled to go into the entire transaction. The mere fact that a conversation or transaction took place does not in a trial give either side the right to bring out the conversation or transaction. To do so would cause either party to be at the mercy of a hostile witness on cross-examination. Should we adopt the appellant's line of reasoning it would appear that any time the fact of a conversation was elicited, the other party could put into evidence the contents of the conversation, no matter how objectionable. This we do not perceive to be the rules of evidence in this state. We are not here concerned with the rule of completeness. Part of the conversation or transaction is not in evidence. Therefore, it was not error to exclude what took place on the grand jury. Nellis v. Allen, 268 Ala. 259, 105 So.2d 659; Jones v. Central of Ga. R. Co., 204 Ala. 148, 85 So. 428.

 The appellant contends that it was error to allow the state to ask defendant's witness, Mrs. Leila Mae Smith, on cross-examination, where she had worked prior to her employment at the 601 Club. There is no merit in this. Conceding that it was error, we do not see how the answers could prejudice this appellant. The witness merely gave the places of her employment prior to going to work for the 601 Club. Error is not presumed on review and the appellant must show that error substantially injures the rights of the accused. Garrett v. State, 248 Ala. 612, 29 So.2d 8; Slayton v. State, 234 Ala. 9, 173 So. 645; Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, certiorari denied 243 Ala. 671, 11 So. 2d 568.

Refused Charges.

Written charge 5 was condemned in Cauley v. State, 33 Ala.App. 557, 36 So.2d 347, certiorari denied 251 Ala. 163, 36 So. 2d 354. What was said there is in conformity with our views. Francis v. State, 188 Ala. 39, 65 So. 969.

Charge 7 was adequately covered in the trial court's oral instructions to the jury.

Charge 13 invades the province of the jury and ignores the fact that the jury may also find the appellant was not free from fault.

Charge 14 is bad in that it ignores the question of freedom from fault. If given, the jury was authorized to find the appellant not guilty even though he may have been instrumental in bringing on the affair which resulted in the death of John Mancil. Sanders v. State, 243 Ala. 691, 11 So.2d 740; Griffin v. State, 28 Ala.App. 314, 184 So. 206, certiorari denied 236 Ala. 584, 184 So. 208.

Charge 16 was condemned in Gipson v. State, 262 Ala. 229, 78 So.2d 293.

Charge 6 is abstract. There was no evidence that this appellant was at his home. It is also faulty in that it ignores the question of the appellant being in a lawful place of business. There was much evidence by both the state and the appellant that gambling was one of the primary functions of the 601 Club. This Court takes judicial notice of the fact that public gambling or running a gaming table is illegal. Title 14, Sec. 263 et seq., Code of Alabama 1940. Under the reasoning of Hill v. State, 194 Ala. 11, 69 So. 941, 2 A.L.R. 509, we must consider the business illegal and the doctrine of retreat applicable.

Finding no error in the record, the judgment is due to be affirmed.

All the Justices concur.