321 So.2d 247

**Myrtle M. JONES**

**v.**

**STATE.**

**I Div. 597.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 28, 1975.

Willis W. Holloway, Jr., Mobile, for appellant.

William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was put to trial upon a Solicitor's Complaint which, omitting the formal parts, reads as follows:

"SOLICITOR'S COMPLAINT

Comes now the State of Alabama, by and through CHARLES A. GRADDICK, District Attorney for the Thirteenth Judicial Circuit of Alabama, and complains that within twelve months before the beginning of this prosecution, Myrtle M. Jones did visit or resort to a barred or barricaded house or room or place built or protected or equipped in the manner described in this section, (Section 296, Title 14,) where cards, dice, roulette wheel or to her gaming implements were kept or exhibited or exposed to view when said Myrtle M. Jones visited or resorted to such place for the purpose of gaming in Mobile County, Alabama contrary to law and against the peace and dignity of the State of Alabama."

The statute under which this complaint was drawn is Title 14, Section 296, Code of Alabama 1940, which provides:

"Exhibiting gambling devices in barred house, or where speaking tubes or elec-

tric signals are used.—No person or persons shall exhibit or expose to view in any barred or barricaded house or room, in any place built or constructed in such manner as to make it difficult of access or ingress to police officers or other officers, or protected, furnished, or equipped with speaking tubes, dumb waiters, electric wires or bells, or other apparatus for giving alarm from the outside or from the inside of such house, or room when two or more persons are present, any cards, dice, roulette wheel, or any gambling implements whatever. Any person violating the provisions of this section shall be guilty of a felony, and shall be punished by imprisonment in the penitentiary for not less than one nor more than five years; *and all persons who visit or resort to any such barred or barricaded house or room or other place that is built or protected or equipped in the manner described in this section and where any cards, dice, roulette wheel or any gaming implements whatever are kept or exhibited or exposed to view when said persons visit or resort to such place for the purpose of gaming, shall be guilty of a misdemeanor, and upon conviction shall be fined not less than fifty nor more than three hundred dollars, and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months."* (Emphasis supplied.)

The facts are uncontradicted. Sergeant Elverd J. Gosdin testified that on December 27, 1974, he was employed by the Alabama Department of Public Safety, Bureau of Investigation and had been so employed for fifteen years. He stated he had worked as a state trooper and was the Governor's bodyguard for three years. That he worked narcotics for four years and had been a general investigation officer since 1970. That since 1970 he had investigated burglaries, murders, robberies, major crimes, and gambling. He said that in the performance of his duties he worked with other law enforcement agencies including various police departments, the F. B.I. and other state enforcement officers.

He further testified that on December 27, 1974, he was working with a gambling detail with the Mobile Police Department and on that night around ten o'clock he had occasion to go to a place behind Broadus Fruit Stand on the Old Shell Road in Mobile.

From the record:

"Q How did you make your entrance?

"A I came—entered the rear by about an eighteen inch wide door, just a piece of exterior panel. The cash register is down here and I believe there is a small —I believe about a 12 inch square window with an open and shut solid door. There is where I came in and asked the proprietor lady at' the cash register to tell Bill that Boots was coming in.

"Q That is Bill—someone in the
. . .

"A Broadus. And she stated that she remembered me; I was there the week before, wasn't I, and I said that I was and she said well go ahead, so I come in this way and come into towards here which is a solid wood door with a small hole in the top, just a cut out hole.

Somebody looked out the door and removed the bar and I was admitted into the room. When you get inside the room there is a small room here then, a short partition in the door. Then, there is a door here. There is a partition that comes down here to here. There is a table or a bar in this area. There is a converted pool table here, and it was a round poker table here.

"Q How many entrances are there to this room?

"A Only one entrance.

"Q And that is this way?

"A Yes.

"Q   Is it right here?

"A   Yes, sir; you go around through the market back behind the cooler and some supplies are stacked up this window here. It should be up more, but this small window overlooked the poker table.

"Q   Now, if you would, Mr. Gosdin, describe the entrance here—the door or any other?

"A   This door as I said, is a solid wooden door with a small hole cut in where you can see from inside out and then on each side of the door they had boards nailed up—I believe one by four's; had a small two by four with a long one by four, running up with a slot with a two by four to step down into this—to keep the door shut.

"Q   After you entered, was there a bar put back up?

"A   After I entered, it was replaced. It was taken down and I was admitted and it was replaced.

"Q   And that is the only entrance—exit into the room?

"A   Yes.

"Q   Besides this small   .   .   .

"A   Yes, well this is just a small, about a twelve inch square window just for handing in drinks and things like this.

"Q   Now, if you would, describe the inside of the room.

"A   Inside is a large square room basically square, I would say, approximately 20 feet square as you come in. You have a door to the right down here into the bedroom. Then, there is no closed door, anything, just some dividers up, but you can see the poker table and you can see the crap table once you get inside the door.

"Q   All this opened to what inside?

"A   Yes, once you walk inside the door, you can see the poker table standing there.

"Q   If you would, describe these tables you mentioned.

"A   This table is just a round, what I would call, just a round poker table. This table is a pool table that has been converted for shooting crap. It has about a twelve inch board that fits down inside. It has a one line across the center; and no other marks on the table.

"Q   What about this third table that you have?

"A·  Well, this was just a long table up here against this wall over here. This is a bar—you know, about so high.

"Q   Was there any activity on the night you were there, December 27, surrounding these tables?

"A   Yes.

"Q   Describe that.

"A   People sitting two or three people sitting at the round table, but there was no gambling going on. All the activity was at the crap table.

"Q   And would you explain what you observed there?

"A   I·observed twelve to twenty people there shooting crap.

"Q   Did you see who was involved?

"A   Did I see? Yes, shooting dice and betting money.

"Q   And you observed money on the table?

"A   Yes.

"Q   Did you participate in this?

"A   Yes.

"Q   On that night, did you have occasion to see the defendant in this place?

"A   Yes, I did.

"Q   Where did you see her?

"A   At the dice table.

"Q  In this room we are speaking of?

"A  Yes.

"Q  Did you observe her at this time?

"A  Yes, I did.

"Q  What was that?

"A  She was placing bets and shooting dice.

"Q  Were there other people around her?

"A  Yes.

"Q  Mr. Gosdin, later that night, did your office along with the Mobile Police Department lead to the arrest of the lady?

"A  Yes, sir; it did.

"Q  Gambling?

"A  Yes."

On cross-examination he was asked if the place where he saw people rolling or shooting dice was the West Mobile Social Club, Incorporated and he replied that he did not know but had been told that it was a private incorporated club. That he was in this place about a week before as the guest of one of the members of the club.

On re-direct examination he testified that he was not a member of the West Mobile Social Club and was not required to show a membership card on being permitted to enter the place.

The state rested and counsel for appellant stated:

"MR. HOLLOWAY: Judge, I move to exclude the state's evidence and discharge the defendant based on the following reasons, separately and severally: one, a failure of the state to prove a prima facie case. Two, a failure of the state to prove each and every material allegation of the complaint."

The court denied the motion.

Appellant then introduced in evidence the Articles of Incorporation of the West Mobile Social Club. It was stipulated that appellant's name was on the membership register of the club.

Appellant called Mr. William Bekurs as a witness for the defense. He testified that he was Chief Investigator for the Mobile County District Attorney's Office. He gave the names of all individuals who were arrested on the night of December 27, 1974. Eighteen persons were arrested including appellant.

On cross-examination he testified that they had this place under observation for a period of several months and had observed numerous persons coming and going.

This was all the evidence in the case and appellant again made a motion to exclude the state's evidence on the same grounds above set out. The motion was denied.

The court adjudged appellant guilty and assessed a fine of $50.00 and upon default in the payment of the fine, she was sentenced to imprisonment in the Mobile County Jail for a term of twenty days.

On this appeal appellant makes no contention that Sergeant Gosdin was at a place where he had no right to be.

Her major contention is that Title 14, Section 296, Code of Alabama 1940, is vague and overbroad and constitutes an invasion of the rights of privacy. We do not agree.

The "police power" is power of self-protection on the part of the community, and while police power is not paramount to the constitution, its free exercise is never interfered with, unless plainly in conflict with higher law, and courts generally are indisposed to suffer its impairment or defeat by constitutional limitations. *State v. Murphy,* 237 Ala. 332, 186 So. 487; *Blackwell v. State,* 230 Ala. 139, 162 So. 310.

"Dice" which are defined as "small cubes used in gaming, or in determining by chance" constitutes a gambling device within the purview of Title 14, Section 296, supra; *Jones v. State*, 26 Ala. 155.

That the place where appellant was arrested while shooting dice was a barred or barricaded house or room cannot be successfully gainsaid under the testimony of Sergeant Gosdin and it certainly cannot enjoy the protection of a private home. *Ingram v. State*, 45 Ala.App. 108, 226 So.2d 169.

The courts take judicial knowledge that gambling or running a gaming table is illegal. *Cook v. State*, 269 Ala. 646, 115 So.2d 101.

It is common knowledge that the gambling evil is often carried on in devious channels. *Agnesia v. State*, 35 Ala.App. 264, 45 So.2d 712.

What the Supreme Court said in *Davidson v. Phelps*, 214 Ala. 236, 107 So. 86, is completely applicable to this case. There the court said:

"In the exercise of the police power of the state, there is left to the lawmaking power a wide latitude of discretion, and we are not persuaded the Legislature has overstepped the bounds in the enactment of this law. We conclude in favor of its validity."

Accordingly, the judgment of conviction is affirmed.

Affirmed.

All the Judges concur.